**RECEIVED**
IN LAKE CHARLES, LA

APR - 7 2008

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| EVELYN LANDRY | : | DOCKET NO. 08-966 |
| VS. | : | JUDGE MINALDI |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the Court is a suit to recover disability benefits under a group long-term disability policy issued to the plaintiff's employer, Cameron State Bank, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.*, (hereinafter "ERISA"). The parties have submitted a stipulated administrative record and agree this matter is now ready for disposition. The plaintiff, Evelyn Landry, submitted a memorandum in support of her long-term disability benefits [doc. 12]. The defendant, Unum Life Insurance Company of America (hereinafter "Unum") filed a Motion for Judgment Based on the Administrative Record [doc. 22]. Ms. Landry filed an Opposition to Unum's Motion [doc. 25]. The joint administrative record was manually filed under seal and is located in the Lake Charles courthouse [doc. 19].

Ms. Landry argues that Unum abused its discretion by denying her long-term disability benefits based upon her fibromyalgia and its accompanying symptoms. Unum contends that its factual determination that Ms. Landry was not entitled to additional disability benefits was correct. Alternatively, Unum contends that it did not abuse its discretion by making the factual determination that Ms. Landry's restrictions and limitations did not preclude her from performing the duties of her

1

occupation, and to the extent that her disability arises from a mental condition, she received the maximum amount of benefits.

## PROCEDURAL HISTORY

### A.) Initial Incident and Claim Investigation

On May 7, 2005, Ms. Landry was employed as an assistant vice president for Cameron State Bank when she was involved in an accident in which she sustained a head concussion.[1] Following the accident, Ms. Landry was unable to return to work due to headaches, memory problems, migraines, dizziness, and fogginess.[2] Her treating physician, Dr. Sanders, submitted an Attending Physician's Statement dated June 7, 2005, restricting Ms. Landry from driving, keeping her head down, and doing legal work.[3] Accordingly, Unum approved and paid short-term disability benefits from May 10, 2005 until November 7, 2005, when Ms. Landry's claim reached its maximum payment under the short-term policy. On January 6, 2006, Unum notified Ms. Landry that it was evaluating her claim for long-term disability benefits.[4]

On January 10, 2006, Unum conducted a telephone interview with Ms. Landry, during which Unum learned that Dr. Best (neurologist), Dr. Mendez (rheumotologist), Dr. Shimer (gall bladder), and Dr. Whiteman (neuropsychologist) were also treating her.[5] Ms. Landry informed Unum that she was diagnosed with neuropathy, fibromyalgia, high blood pressure, loss of memory, vertigo, and

---

[1] UACL 00065; 00120-00124.

[2] UACL 00066.

[3] *Id.*

[4] UACL 00069-00071.

[5] UACL 00120-00124.

2

pain, and that she was unable to drive or work.[6]

Next, Unum requested and received medical records from the new physicians that Ms. Landry identified. Dr. Shimmer indicated that Ms. Landry's treatment went well and did not provide any restrictions from working.[7] The medical records from Dr. Mendez indicated that Ms. Landry had fibromyalgia, as noted by a tender point test; however, Dr. Mendez did not note any restrictions or limitations.[8] The medical records from Dr. Best show that he treated Ms. Landry from August 5, 2005 until March 9, 2006 for polyneuropathy.[9] Dr. Best did not note any restrictions or limitations that would preclude Ms. Landry from working.[10] The medical records from Dr. Sanders, dated November 3, 2005, stated that "as soon as the patient's symptoms are under control, I intend to release her back to work."[11]

On March 28, 2006, Unum advised Ms. Landry via letter that it was commencing its claim evaluation.[12] Unum then began to pay Ms. Landry benefits under a Reservation of Rights, while its staff physicians and independent medical evaluators continued to evaluate her claims.[13]

---

[6] *Id.*

[7] UACL 00228-238.

[8] UACL 00137-00139.

[9] UACL 00248-00267.

[10] *Id.*

[11] UACL 00269-00279.

[12] UACL 00281.

[13] UACL 00350-00353.

## B.) Evaluation and Initial Approval of the Claim, and Termination of Benefits

On April 14, 2006, Beth Hughes, R.N., performed an initial summary of Ms. Landry's medical records. The report stated that Dr. Sanders was the only physician to restrict Ms. Landry's activities. Both Drs. Sanders and Best recommended that Ms. Landry undergo neuropsychological testing, which Dr. Whiteman performed. Dr. Whiteman diagnosed Ms. Landry with adjustment disorder and a depressed mood, but did not restrict her activity.[14]

On April 10, 2006, Unum learned that Ms. Landry was receiving monthly SSDI benefits of $1,125.[15] She executed a Consent for Release for Unum to obtain information from the Social Security Administration regarding her benefits.[16] On May 8, 2006, Unum learned that Ms. Landry's SSDI approval was premised on affective and personality disorders.[17]

On April 13, 2006, Dr. Smith, Unum in-house doctor, recommended that Ms. Landry undergo an Independent Medical Examination (hereinafter "IME"), and that a clinical neuropsychologist employed by Unum, Dr. McLaren, Ph.D, review Dr. Whiteman's report.

On June 5, 2006, Dr. McLoar performed an IME, in which he reviewed Ms. Landry's medical records, obtained a detailed medical history, and performed a physical examination. Dr. Loar's exam did not support a diagnosis of polyneuropathy.[18] Dr. Loar also noted Ms. Landry should not have

---

[14] UACL 00299-00301.

[15] UACL 00290-00292.

[16] UACL 00365-00366.

[17] UACL 00413.

[18] UACL 00484-00490.

any limitations or restrictions from her job functions as a result of fibromyalgia.[19] Dr. Loar also concluded that Ms. Landry's depressive symptoms contributed significantly to her complaints.[20] Dr. Loar ultimately concluded that no injury, physical or mental, should preclude Ms. Landry from performing her previous job duties.[21] Dr. Loar additionally noted that if Ms. Landry felt unable to perform her job duties due to her depressive symptoms, then she should receive treatment.[22]

Dr. Smith, Unum's in-house doctor, reviewed Dr. Loar's report and agreed with the conclusions reached therein.[23] Although neither Dr. Smith nor Dr. Loar believed that Ms. Landry was disabled due to a psychiatric condition, Unum's claim representative consulted with Unum's clinical psychologist, Dr. Goldsmith, to ascertain whether the SSA information supported a disability award pursuant to the Unum long-term disability policy.[24] Noting that Dr. Whiteman, Ms. Landry's neuropsychologist, did not claim that her mental condition precluded her from working, Dr. Goldsmith determined that "the available documentation does not provide reasonable clinical evidence in support of the position that a mental disorder caused or substantially contributed to a loss of functional capacity and/or imposed work-restrictions for any documented span."[25]

On September 14, 2006, Ms. Landry informed Unum via telephone that she participated in

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] UACL 00550-00551.

[24] *Id.*

[25] *Id.*

a sleep study. The sleep study, which was conducted on August 8, 2006, demonstrated that Ms. Landry was diagnosed with sleep apnea, insomnia, and fibromyalgia.[26] No restrictions or limitations were assigned as a result of the sleep study.[27] On October 18, 2006, Catherine Rogers conducted a vocational assessment, in which she concluded that Ms. Landry was able to perform the material duties of her regular occupation.[28] On October 23, 2006, Unum notified Ms. Landry by letter that Unum determined that her disability was not supported by the medical documentation, and accordingly, her benefits would be terminated.[29]

### C.) Initial Appeal and Reinstatement of Benefits

On January 3, 2007, Ms. Landry notified Unum via letter that she was appealing the benefit determination.[30] On January 23, 2007, Unum acknowledged the appeal request and notified Ms. Landry it would make a determination within ninety days.[31] One of Unum's registered nurses then prepared a preliminary medical summary, in which she noted that Dr. Mendez found Ms. Landry can "lift ten pounds occasionally; use both hands for simple grasp but not for fine manipulation, median dexterity or power grip; can occasionally bend, climb stairs, reach above shoulder and pull/push five pounds; can never kneel or crawl."[32] Furthermore, on December 15, 2005, Dr. Mendez reported that,

---

[26] UACL 00579-00600.

[27] *Id.*

[28] UACL 00613-00617.

[29] UACL 00654-00665.

[30] UACL 00642.

[31] UACL 00637.

[32] UACL 00655-00656.

according to Ms. Landry's subjective complaints, she is unable to work.[33]

Based on her review, the nurse advised that Unum obtain updated medical records to determine Ms. Landry's current restrictions, whether clinical data supported a loss of functional ability from a physical standpoint beyond the date that benefits were paid, whether clinical data supported the existence of a psychiatric condition, and if so, the limitations and restrictions for that condition.[34]

Dr. Whiteman's records did not indicate that any treatment or evaluation had occurred after the September 2005 evaluation.[35] Unum's clinical neuropsychologist, Dr. Spica, reviewed Dr. Whiteman's records and concluded that the record lacked documentation to support a finding of persistent impairment.[36] Moreover, Dr. Spica concluded that Ms. Landry's level of treatment was not consistent with someone who had a debilitating psychiatric disorder.[37] Moreover, Unum received updated medical records from Dr. Best, Dr. Sanders, and Dr. Mendez, as well as additional diagnostic tests.[38] Upon receiving all of the updated records, Unum's nurse concluded that nothing in the medical records from Dr. Sanders, Dr. Best, or Dr. Mendez would preclude Ms. Landry from performing her previous level of functioning during a workday.[39]

---

[33] UACL 00663.

[34] UACL 00663-00664.

[35] UACL 00681-00692.

[36] UACL 00783-00785.

[37] *Id.*

[38] UACL 00851-00860, 00840, 00845-00846.

[39] UACL 00859.

Next, Unum referred the file to its onsite physician, Dr. Hill, who reviewed the file on May 14, 2007.[40] Although Dr. Hill acknowledged that Ms. Landry was diagnosed as having fibromyalgia, he did not find the medical records supported any restrictions or limitations.[41] Moreover, Dr. Hill questioned how Ms. Landry could receive a diagnosis of peripheral neuropathy when her electrodiagnostic studies were normal, as was her motor exam.[42] Dr. Hill concluded that Ms. Landry's physical conditions did not support any restrictions or limitations.[43]

Finally, Ms. Landry's file was transferred to Unum's Quality Control Division, where the Unum representative agreed with Dr. Hill that Ms. Landry's physical conditions did not support any vocational restrictions.[44] The Quality Control Representative was concerned, however, because the IME physician stated that Ms. Landry's depressive symptoms contributed to her complaints, and because the Social Security Administration had determined she was disabled due to a psychiatric diagnosis.[45] Therefore, on May 18, 2007, Unum informed Ms. Landry that benefits were being approved due to her psychiatric condition.[46] Because the Policy limits payments for disabilities arising from a mental condition to twenty-four months, Ms. Landry was advised that her benefits

---

[40] UACL 00874-00875.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] UACL 00877-00878.

[45] *Id.*

[46] *Id.*

8

would run out at that time.[47]

## D.) Subsequent Claims Handling

On May 24, 2007, Unum's claim representative informed Ms. Landry she would receive benefits from October 24, 2006 through May 2, 2007 pursuant to the Policy's mental illness provision, and that they would be offset by her SSDI benefits.[48] Ms. Landry was also informed that her benefits would expire no later than November 2, 2007.[49] Unum further requested statements from any physicians that provided her with restrictions and limitations due to any physical disabilities.[50] Unum only received a response from Dr. Mendez.

On July 19, 2007, Dr. Mendez submitted an Attending Physician's Statement that Ms. Landry's fibromyalgia was the primary reason she was unable to work.[51] Furthermore, for the first time, Dr. Mendez stated that Ms. Landry could not sit, stand, or walk for any length of time, could not lift or carry anything, and could never climb, bend, stoop, or reach above her shoulder.[52] Unum asked for updated medical records from March 14, 2007.[53] The updated medical records, received on November 6, 2007, indicated that Dr. Mendez had seen Ms. Landry on March 14, April 24, and October 8, 2007.

---

[47] UACL 00883-00886.

[48] UACL 00893-00896.

[49] *Id.*

[50] UACL 00907-00909.

[51] UACL 00936-00938.

[52] *Id.*

[53] UACL 00940-00941.

Unum also received additional records from SSA. Notably, Dr. Dilks performed a psychological assessment for SSDI and concluded that although Ms. Landry complained of fibromyalgia and neuropathy, her depression and pain disorder was what precluded her from working.[54] Dr. Dilks further concluded that due to her psychological symptoms, Ms. Landry was not a good candidate for gainful employment.[55]

Once again, Dr. Loar reviewed Ms. Landry's updated records and provided a revised opinion. On November 21, 2007, Dr. Loar concluded that Ms. Landry does not have peripheral neuropathy and that her fibromyalgia symptoms should not restrict or limit her occupational duties.[56] Accordingly, on December 10, 2007, Unum sent Ms. Landry a letter advising her that the twenty-four month mental illness limitation expired on November 2, 2007.[57]

### E.) Second Appeal

On January 29, 2008, Ms. Landry informed Unum that she was appealing the decision. Unum once again requested and received updated medical records.[58] Dr. Schnars, an internist employed by Unum, then performed a comprehensive evaluation as to whether any physical condition prevented Ms. Landry from performing her job beyond December 10, 2007. Ms. Landry's additional medical information indicated that an Obtryx sling was implanted for stress urinary

---

[54] UACL 01370-01372.

[55] Id.

[56] UACL 01508-01516.

[57] UACL 001308.

[58] UACL 001251, 01254, 01257, 01260, 01263-01264, 01269.

incontinence on October 29, 2007.[59]

The review Dr. Schnars performed revealed that Ms. Landry's fibromyalgia records did not support the restrictions she described.[60] Moreover, Dr. Schnars was concerned by the lack of a physical therapy or exercise program, which helps fibromyalgia patients.[61] Notably, Dr. Schnars found that Dr. Mendez's March 14, 2007 and July 19, 2007 reports were inconsistent. Dr. Schnars therefore discredited his July 19, 2007 report in which he stated she could not sit, stand, walk, lift, climb, twist, bend, stoop, or reach above the shoulder.[62] As to Ms. Landry's reported sleep disturbance and hypertension, Dr. Schnars concluded that these were both co-existent diagnoses that would not impact daily functioning.[63] Dr. Schnars also found that Ms. Landry had no evidence of polyneuropathy.[64] Dr. Schnars noted that Ms. Landry has adjustment disorder, mood disorder, and avoidant personality, which impacts her ability to have gainful employment.[65] Dr. Schnars concluded that Ms. Landry could remain off of work until January 17, 2008, at which point she could begin a work reconditioning program. Eventually, Ms. Landry would return to full-time work.[66]

Dr. Spica, Unum's clinical neuropsychologist, again conducted a review and concluded that

---

[59] UACL 001182-01190.

[60] Id.

[61] Id.

[62] Id.

[63] Id.

[64] Id.

[65] UACL 01188-01189.

[66] UACL 01209-01210.

Ms. Landry's restrictions based upon cognitive impairment were not supported.[67] Finally, Ms. Landry's file was referred to a second vocational consultant, Shannon O'Kelley, who concluded that Ms. Landry could perform her job under the limitations and restrictions presented.[68]

On May 22, 2008, Unum notified Ms. Landry that its appeal was complete and that Ms. Landry would receive benefits from December 10, 2007 through January 17, 2008, due to sleep apena.[69] Unum also agreed to pay an additional eight weeks of benefits, from January 17, 2008 through March 14, 2008, so that Ms. Landry could undergo work reconditioning.[70]

### F.) Unum's Policy

The long-term disability policy that covers Ms. Landry defines an insured as disabled when: "because of injury or sickness the insured cannot perform each of the material duties of his regular occupation."[71] The Policy limits benefits for disability due to mental illness as twenty-four months of monthly payments unless the insured is in a hospital or institution at the end of the twenty-four month period.[72] The Plan, through its Plan administrator, delegates discretionary authority to make benefit determinations under the Plan to Unum.[73]

---

[67] UACL 01220-01225.

[68] *Id.*

[69] UACL 01230-01232.

[70] *Id.*

[71] UACL 00088.

[72] UACL 00094-00095.

[73] UACL 000926-000927.

## STANDARD OF REVIEW

When reviewing an administrator's determinations, the court is limited to the evidence in the administrative record at the time the determination was made. *Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 333 (5th Cir. 2001); *see also Vega v. Nat'l Life Ins. Services, Inc.*, 188 F.3d 287 (5th Cir. 1999). When the Plan gives the Plan administrator "discretionary authority to determine the eligibility for benefits or to construe the terms of the Plan," a denial of ERISA benefits is reviewed under an abuse of discretion standard. *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir. 1994) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). Here, because Unum has discretionary authority to determine the eligibility for benefits or construe the terms of the Plan, the proper standard is abuse of discretion.

"In assessing whether to grant or deny benefits, an administrator must make two determinations. First, he must determine the facts underlying the claim presented and then he must determine whether the facts establish a claim to be honored under the terms of the policy." *Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 346 (5th Cir. 2002) (*citing Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir.1998)). In the instant case, Ms. Landry challenges Unum's factual conclusions that she is not physically disabled.

The Fifth Circuit employs a two-part test is utilized when reviewing a Plan administrator's denial of benefits under the arbitrary and capricious standard. "First, a court must determine the legally correct interpretation of the Plan. If the administrator did not give the Plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion." *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637-38 (citations omitted). In considering whether the administrator's interpretation is legally correct, the court considers three factors: "(1) whether a uniform construction of the policy has been given by the administrator, (2)

13

whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy." *Lain*, 279 F.3d at 344. "Only if the court determines that the administrator did not give the Plan the legally incorrect interpretation, must the court then determine whether the administrator's decision was an abuse of discretion." *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001). When, however, "the case does not turn on sophisticated plan interpretation issues," the court is not required to apply the two-step process of *Wildbur. See, e.g., High v. E Systems, Inc.*, 459 F.3d 573, 577 (5th Cir. 2006). Rather, the court can simply assess whether Unum abused its discretion in determining that Ms. Landry's disability benefits should be terminated.

Here, Ms. Landry does not dispute Unum's interpretation of any policy term. She instead maintains that Unum abused its discretion in concluding that she does not have physical restrictions and limitations that prevent her from working. Accordingly, because the record indicates that Unum did not abuse its discretion, the analysis shall bypass whether Unum's determination was legally correct. *See, e.g., High v. E Systems, Inc.*, 459 F.3d at 577. The Court shall thus examine whether Unum abused its discretion by concluding that Ms. Landry does not have physical restrictions and limitations that prevent her from working.

In applying the abuse of discretion standard, the court must analyze whether the Plan administrator acted arbitrarily or capriciously. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 829 (5th Cir. 1996).[74] An ERISA claim administrator's determination is not an abuse of discretion when it is supported by substantial evidence. *Meditrust Fin. Sers. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). When considering whether there has been an abuse of discretion, the Fifth Circuit examines: "(1) the plan's internal consistency under the administrator's interpretation, (2) any relevant regulations, (3) the factual background underlying the decision, and

---

[74] In the Fifth Circuit, the abuse of discretion standard is the same as the arbitrary and capricious standard. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533 (5th Cir. 2007).

(4) any indication of lack of good faith." *Lain*, 279 F.3d at 346.

## ANALYSIS

Ms. Landry argues Unum abused its discretion by determining that her fibromyalgia is not disabling, and also because Unum has a conflict of interest as Unum is both the Plan administrator and the insurer.

### A.) Conflict of Interest

In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court considered the impact of the conflict of interest that is created when an insurer evaluates and pays claims. 128 S. Ct. 2343, 2351 (2008). The Court concluded such conflicts are only one of several case-specific factors the district court considers. *Id.* (noting that "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance"). "The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* Furthermore, "[i]t should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy. . ." *Id.*

Although this Court notes the inherent conflict of interest that exists where Unum both evaluates and pays claims, there is no evidence in the record that Unum has a history of biased claims administration. Where a conflict theoretically exists but the plaintiff has provided no actual evidence with respect to the degree of the alleged conflict, the Fifth Circuit has determined that "it is appropriate to review the administrator's decision with only a modicum less deference than [the court] otherwise would." *Vega*, 188 F.3d at 301. Moreover, having reviewed the administrative record, it appears that Unum took several steps to ensure accurate claims assessment, through assigning the case to claims representatives, ordering IMEs, and ensuring that all reviewing

physicians had complete medical records. Accordingly, while there is an inherent conflict of interest present, this Court shall review the administrator's decision with only a modicum less deference than it otherwise would.

### B.) Unum's Factual Determinations

Ms. Landry argues that Unum abused its discretion in concluding that her fibromyalgia did not prevent her from working. Ms. Landry argues that Unum failed to properly consider Dr. Mendez's July 19, 2007 report, in which he concluded her fibromyalgia prevented her from working. She also notes that several of her other physicians have also recorded a diagnosis of fibromyalgia. Finally, relying on this Court's *Hoffpauir v. Aetna*, 06-1939, 2007 WL 4144937 (W.D. La. 11/20/2007) decision, Ms. Landry argues that Unum improperly based its denial of benefits on a failure to recognize that fibromyalgia is a disease, or improperly required her to objectively prove she has fibromyalgia.

The only evidence in the record that fibromyalgia precludes Ms. Landry from working is Dr. Mendez's July 19, 2007 report. In that report, Dr. Mendez reported that Ms. Landry could not walk, stand, or sit for any period of time, and therefore could not perform several of the material duties of her job. Unum considered the July 2007 report, but did not find it credible because it was inconsistent with the March 14, 2007 report. Moreover, Dr. Mendez had not seen Ms. Landry between the time of Unum's decision that her benefits would expire on November 2, 2007 and when he submitted the July 2007 Attending Physician's Statement. Furthermore, Dr. Mendez's July 2007 statement was unaccompanied by medical evidence that Ms. Landry's condition had changed. Unum concluded that the "medical records do not describe abnormalities of physical exam or deficits of functional capacity sufficient to support the restrictions and limitations described."[75]

The Supreme Court held that:

---

[75] UACL 01185.

Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Unum need not accord special weight to any treating physician's opinion. Unum is also not required to explain why it credited the conclusions of its IMEs and reviewing physicians over Dr. Mendez in determining Ms. Landry's physical conditions did not preclude her from working. Furthermore, Ms. Landry's contention that Unum failed to consider the evidence submitted by her other treatment providers is unavailing. The record clearly demonstrates that Unum obtained all records from Ms. Landry's treating physicians, as well as the records from SSA, in addition to having Ms. Landry evaluated by three in-house medical doctors, and having her file reviewed by several specialists.

Moreover, Ms. Landry's reliance on *Hoffpauir* is misplaced. Unum did not base its denial of benefits on a failure to recognize fibromyalgia as a disease, nor did Unum require Ms. Landry to objectively prove she suffers from fibromyalgia, as this Court found impermissible in *Hoffpauir*. *Hoffpauir*, 2007 WL 4144937, *6. Rather, Unum concluded that Ms. Landry failed to demonstrate that her fibromyalgia prevented her from performing her job requirements. As this Court noted in *Hoffpauir*, a plan administrator may properly require an insured to objectively prove she is unable to perform her job, and the failure to do so is a proper basis for termination or denial of benefits.

17

## CONCLUSION

Having considered the administrative record and the parties' briefs, this Court finds that Unum did not abuse its discretion; accordingly,

IT IS ORDERED that Unum's Motion for Judgment Based on the Administrative Record [doc. 22] is hereby GRANTED;

IT IS FURTHER ORDERED that Unum's denial of benefits is hereby AFFIRMED.

Lake Charles, Louisiana, this ___ day of _____ , 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

18